**Vera DUKE, Individually and as the Administratrix of the Estate of Christopher Wade, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**COUNTY OF NASSAU and Anthony Raymond, Police Officer, in his individual capacity, Defendants–Appellants–Cross–Appellees,**

Nassau County Police Department,
Defendant.

Nos. 02–7049, 02–7069, 02–7709.

United States Court of Appeals,
Second Circuit.

April 25, 2003.

David B. Goldin, Deputy County Attorney, (Lorna B. Goodman, County Attorney of Nassau County, Tara Talmadge, Deputy County Attorney), Mineola, NY, for Defendants–Appellants, of counsel.

Scott A. Korenbaum, (Frederick K. Brewington), Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiff–Appellee, of counsel.

Present: KEARSE, JACOBS, and CABRANES, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment and order of the district court be, and they hereby are, **AFFIRMED.**

Defendants–Appellants–Cross–Appellees County of Nassau (the "County") and Anthony Raymond, a Nassau County Police Officer (collectively, the "defendants"), appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), entered following a jury trial.

This case arose out of the death of Christopher Wade, who was shot and killed by Officer Raymond on December 30, 1995. Plaintiff–Appellee–Cross–Appel-

lant Vera Duke, the mother of Wade's two children, and the administratrix of Wade's estate, prevailed on three claims brought against Raymond, lost on four claims, and was awarded approximately $2.25 million in damages—an amount ultimately reduced by the district court to approximately $2.16 million.

The sole issue on the appeal is whether the district court abused its discretion in excusing Juror No. 7, who had complained of "verbal abuse" by other jurors and attendant stress during deliberations, and in denying the defendants' motion for a mistrial. The sole issue on the cross-appeal is whether the district court abused its discretion in denying Duke's motion to extend the time to file a cross-appeal from the judgment.

Dismissal of a juror pursuant to Fed. R.Civ.P. 47(c), and denial of a motion for a mistrial, are reviewed for abuse of discretion. *See United States v. Thomas,* 116 F.3d 606, 612 (2d Cir.1997) (dismissal of juror under Fed.R.Crim.P. 23(b)); *United States v. Carson,* 52 F.3d 1173, 1188 (2d Cir.1995) (motion for a mistrial).

On the first and third days of jury deliberations, the jury sent notes to Judge Seybert claiming that it was "hopelessly deadlocked," but was told to continue on both occasions. On the morning of the fourth day, Juror No. 7 telephoned the courtroom deputy and explained that he had been subjected to "verbal abuse," which caused him "great stress" and "stomach problems, diarrhea, loss of appetite, [and an] inability to sleep." With counsel present, Judge Seybert questioned Juror No. 7, who explained that he was suffering mentally and physically, that stress rendered him unable to continue deliberations, and that he had experienced a similar episode nine years earlier that was treated by therapy and drugs. He added:

And I have been verbally attacked in the jury room numerous times. And I just can't stand to go back again. There are a couple of people in there that I can't even bear to look at. I don't think at this point that I can continue to deliberate.

When asked about the nature of the verbal attacks, Juror No. 7 said that they were along the lines of "insults."

Defendants' counsel contended that Juror No. 7's problems were the result of others on the jury verbally abusing him, likely in an effort to force him off the jury. Duke's counsel contended that there was no evidence that other jurors were trying to force Juror No. 7 off the jury, and that reasons other than the juror's view on the merits could have caused the stress-related problems. Judge Seybert dismissed Juror No. 7 based on the juror's stated maladies, and denied the defendants' motion for a mistrial.

■ Defendants urge reversal on the basis of *United States v. Thomas,* 116 F.3d 606 (2d Cir.1997). In *Thomas,* we held that a juror could be removed during deliberations if the juror was engaged in nullification, *id.* at 617, but that the facts of *Thomas* suggested a possibility that the juror in question was holding out based on his view of the evidence. *Id.* at 623–24. We ruled that a juror should not be dismissed "if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the ... evidence." *Id.* at 621–22 (quoting *United States v. Brown,* 823 F.2d 591, 596 (D.C.Cir.1987)) (emphasis omitted). In a footnote, we stated: "[I]f the record raises any possibility that the juror's views on the *merits of the case,* rather than a purposeful intent to disregard the court's instructions, underlay the request that he be discharged, the juror must not be dismissed." *Id.* at 622 n. 11.

Defendants contend Judge Seybert erred in dismissing Juror No. 7 because there is a possibility that the juror's request for discharge was based on his views of the merits of this case.

We conclude that the district court did not abuse its discretion in dismissing Juror No. 7. In *United States v. Baker*, 262 F.3d 124 (2d Cir.2001), we stated that "[t]he stringent rule announced in *Thomas* applies to removal of a juror by reason of the juror's determination to vote without regard to the evidence." *Id.* at 131. Courts in this Circuit have interpreted *Thomas* to apply when the record includes evidence that a juror is a "holdout." *See, e.g., United States v. Samet*, 207 F.Supp.2d 269, 281 (S.D.N.Y.2002). In this case, there was no evidence before Judge Seybert that Juror No. 7 was determined to vote without regard to the evidence or was a holdout, and ample evidence that Juror No. 7 was suffering physically and mentally. We cannot hold that the district court abused its discretion in excusing Juror No. 7 from further deliberations, or by denying the motion for a mistrial.

■ Duke cross-appeals from the district court's decision not to extend Duke's time to file a cross-appeal from the judgment—a decision we review for abuse of discretion. *United States v. Carson*, 52 F.3d 1173, 1180 (2d Cir.1995). Under Fed. R.App. P. 4(a)(5)(A), a party seeking an extension of time must show "excusable neglect or good cause." Four factors are relevant to determining whether a motion to extend should be granted: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd.*, 507 U.S. 380, 395,

113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also United States v. Hooper*, 43 F.3d 26, 28 (2d Cir.1994) (applying four *Pioneer* factors to Rule 4). Of these factors, the reason for the delay is often the "most prominent factor," *Hooper*, 43 F.3d at 28. This Court has noted that "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir.1997).

In this case, Duke's counsel asserts that the filing delay was caused by a miscommunication between trial counsel and appellate counsel over who had responsibility for filing the notice of cross-appeal. Moreover, Duke's trial counsel was engaged in a separate criminal trial involving a different client, and therefore could not monitor appellate counsel.

The district court applied the four *Pioneer* factors, determining that the first two—danger of prejudice, and length and impact of delay—tipped in favor of Duke, while the fourth—bad faith—"tip[ped] somewhat in defendants' favor," because Duke waited a week to file the motion to extend despite Duke's intention to cross-appeal and her counsel's familiarity with the relevant procedures.

The court relied largely on the finding that the third factor—the reason for delay—"weighs heavily in favor of the defendants." The district court concluded that Duke's reason for the delay was based on circumstances within the control of her counsel, and noted that counsel had "the assistance of several associates and law clerks who could have prepared and filed the requisite notice or ensured that the notice was filed in a timely manner."

The district court fulfilled its obligation to consider the *Pioneer* factors, and Duke has not demonstrated that the denial of

her motion was an abuse of the court's discretion.

For the foregoing reasons, the judgment and order of the district court are hereby **AFFIRMED.**